**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HECTOR GUTIERREZ, | NO. CV 24-10415 MCS (AS) |
| Plaintiff, | |
| v. | **ORDER DISMISSING COMPLAINT WITH** |
| COUNTY OF LOS ANGELES, et al., | **LEAVE TO AMEND** |
| Defendants. | |

On November 28, 2024, Hector Gutierrez ("Plaintiff"), proceeding pro se and in forma pauperis, filed a Complaint pursuant to 42 U.S.C. § 1983.  (Docket ("Dkt.") No. 1).  On March 17, 2025, the Court dismissed the Complaint with leave to amend.  (Dkt. No. 10).  On April 18, 2025, Plaintiff filed a First Amended Complaint ("FAC").  (Dkt. No. 13).

For the reasons set forth below, the FAC must be dismissed with leave to amend.[1]

---

[1] Magistrate judges may dismiss a complaint with leave to amend without approval from the district judge.  McKeever v. Block, 932 F.2d 795, 798 (9th Cir. 1991).

**PLAINTIFF'S ALLEGATIONS**

Plaintiff's FAC names as defendants the County of Los Angeles ("County"), the Los Angeles County Sheriff's Department ("LASD"), Los Angeles County Superior Court Judge Jennifer Hall Cops and LASD employees Captain John J. Lecrivain, Sergeants Ayub Mangra and Ochoa, and Deputies Mergarit, Sepulveda, and Burnell. (FAC at 3-7). Judge Cops and the LASD employees are sued in their individual capacities. (FAC at 3-6).

Plaintiff's FAC is not a model of clarity. Plaintiff alleges Deputy Mergarit removed him from Judge Cops's courtroom for unknown reasons. (FAC at 9). He asserts that Deputy Mergarit threatened him, summoned LASD personnel, and retaliated against Plaintiff when Plaintiff asked Deputy Mergarit what Plaintiff had done. (FAC at 3, 9). Plaintiff also contends that Judge Cops witnessed this interaction in her courtroom but failed to intervene to protect Plaintiff. (FAC at 4, 9).

Plaintiff complains that Deputy Sepulveda forced him from the courtroom using "threat[s] and intimidation [to] put [Plaintiff] under stress and duress of harm and arrest. . . ." (FAC at 4, 9). When Plaintiff asked Deputy Sepulveda why he removed Plaintiff from the courtroom, Deputy Sepulveda responded "'I have no idea.'" (Id.).

When Plaintiff protested his removal, Deputy Burnell told Plaintiff he needed to be quiet and stop using foul language. (FAC at 4-5). Plaintiff responded that "a citizen can tell a police officer to

go fuck their mother and the police officer has to stay there and take it." (FAC at 5). Deputy Burnell responded by touching Plaintiff and telling Plaintiff that if Plaintiff said that, Plaintiff "would regret [it] and [it would be the] last thing he would do." (FAC at 5, 10). Plaintiff also alleges Deputy Burnell failed to intervene to protect Plaintiff's rights after learning Plaintiff was removed from the courtroom without just cause. (FAC at 10).

At some point, Sergeant Ochoa began an investigation by speaking with Judge Cops and Deputy Mergarit and reviewing video evidence. (FAC at 5). Yet, Sergeant Ochoa failed to intervene to allow Plaintiff to complete his court business by allowing him to return to court and have access to the judge and court clerk. (FAC at 5, 10).

Plaintiff also complains that he asked Sergeant Mangra to generate Watch Commander Service Comment Reports, but Sergeant Mangra did not immediately do so. (FAC at 6). Instead, Sergeant Mangra tried to dissuade Plaintiff from filing complaints against the deputies by claiming there was a warrant for Plaintiff's arrest. (FAC at 6, 11). However, the warrant never existed. (FAC at 11). Moreover, Sergeant Mangra failed to intervene to insure Plaintiff had access to the courtroom even though he knew Plaintiff was innocent. (Id.).

Plaintiff asserts that Captain Lecrivain was aware of the misconduct of his subordinates but did not take reasonable steps to prevent or address them and failed to train and supervise the subordinates. (FAC at 6, 11-12).

Finally, Plaintiff alleges the County and LASD maintain policies and customs that contributed to the violation of Plaintiff's rights. (FAC at 9, 12-13).

Based on these allegations, Plaintiff alleges Defendants violated his First, Fourth, Fifth, Eighth and Fourteenth Amendment rights. (FAC at 7-8). Plaintiff seeks "$100,000,000 from each and every defendant[.]" (FAC at 13).

## STANDARD OF REVIEW

Since Plaintiff is proceeding in forma pauperis, Plaintiff's Complaint is subject to sua sponte review and must be dismissed if it is: (1) frivolous or malicious; (2) fails to state a claim upon which relief may be granted; or (3) seeks monetary relief from a defendant immune from such relief. See 28 U.S.C. § 1915(e)(2)(B); Lopez v. Smith, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc); Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998); see also Calhoun v. Stahl, 254 F.3d 845, 845 (9th Cir. 2001) (per curiam) (Section 1915(e)(2) applies to all complaints brought by plaintiffs proceeding in forma pauperis).

Dismissal for failure to state a claim is appropriate if Plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

4

liable for the misconduct alleged." Iqbal, 556 U.S. at 678; Hartmann v. Cal. Dep't of Corr. & Rehab., 707 F.3d 1114, 1122 (9th Cir. 2013). Although Plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," Twombly, 550 U.S. at 555; Iqbal, 556 U.S. at 678, "[s]pecific facts are not necessary; the [complaint] need only give the [Defendants] fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (citations and internal quotation marks omitted); Twombly, 550 U.S. at 555.

In considering whether to dismiss a complaint, the Court must accept the factual allegations of the complaint as true, Wood v. Moss, 572 U.S. 744, 755 n.5 (2014); Erickson, 551 U.S. at 93-94, construe the pleading in the light most favorable to the pleading party, and resolve all doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969); Berg v. Popham, 412 F.3d 1122, 1125 (9th Cir. 2005). Pro se pleadings are "to be liberally construed" and are held to a less stringent standard than those drafted by a lawyer. Erickson, 551 U.S. at 94; Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam); see also Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) ("*Iqbal* incorporated the *Twombly* pleading standard and *Twombly* did not alter courts' treatment of pro se filings; accordingly, we continue to construe pro se filings liberally when evaluating them under *Iqbal*."). Dismissal for failure to state a claim can be warranted based on either the lack of a cognizable legal theory or the absence of factual support for a cognizable legal theory. Pell v. Nuñez, 99 F.4th 1128, 1133 (9th Cir. 2024). A complaint may also be dismissed for failure to state a

claim if it discloses some fact or complete defense that will necessarily defeat the claim. Boquist v. Courtney, 32 F.4th 764, 774 (9th Cir. 2022); Rivera v. Peri & Sons Farms, Inc., 735 F.3d 892, 902 (9th Cir. 2013).

**DISCUSSION**

The Court has reviewed the FAC under the aforementioned standards and has concluded the FAC is deficient and must be dismissed with leave to amend.

A "pro se litigant is not excused from knowing the most basic pleading requirements." American Ass'n of Naturopathic Physicians v. Hayhurst, 227 F.3d 1104, 1107-08 (9th Cir. 2000). For instance, Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2); see also Fed. R. Civ. P. 8(d)(1) ("Each allegation must be simple, concise, and direct."). "The 'short and plain statement' must provide defendants with 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 346 (2005) (citation omitted); see also Skaff v. Meridien N. Am. Beverly Hills, LLC, 506 F.3d 832, 841 (9th Cir. 2007) (per curiam) (The "purpose of a complaint under Rule 8 [is] to give the defendant fair notice of the factual basis of the claim and of the basis for the court's jurisdiction."); Jones v. Cmty. Redevelopment Agency, 733 F.2d 646, 649 (9th Cir. 1984) ("[A] pleading must give fair notice and state the elements of the claim plainly and succinctly." (citation and

1  internal punctuation omitted)).  To do so, "Rule 8(a)(2) . . . requires
2  a 'showing,' rather than a blanket assertion, of entitlement to
3  relief[,]" and "[f]actual allegations must be enough to raise a right
4  to relief above the speculative level, on the assumption that all the
5  allegations in the complaint are true (even if doubtful in fact)."
6  Twombly, 550 U.S. at 555-56 (citations omitted); Cook v. Brewer, 637
7  F.3d 1002, 1004 (9th Cir. 2011).  "[T]he pleading standard Rule 8
8  announces does not require 'detailed factual allegations,' but it
9  demands more than an unadorned, the-defendant-unlawfully-harmed-me
10 accusation."  Iqbal 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

12     The Court dismissed Plaintiff's initial complaint because it was
13 a "conclusory pleading [that failed] to satisfy Rule 8's requirements."
14 Gutierrez v. Cnty. of Los Angeles, 2025 WL 833440, *3-4 (C.D. Cal.
15 2025).  The FAC has not rectified this deficiency.  If anything, the
16 FAC's factual allegations are less clear than those made in the
17 original complaint.  And Plaintiff has still lumped together multiple
18 alleged constitutional violations in a single claim without attempting
19 to clearly set forth facts supporting any of the alleged constitutional
20 violations.  For instance, Plaintiff asserts that "[u]nder the Fifth
21 Amendment['s] takings clause[,] Plaintiff[']s rights, property and
22 things were taken without just compensation[,]" (FAC at 8) but he does
23 not explain what exactly he believes was taken or by whom.  Thus, the
24 Court and Defendants are left to speculate as to the possible basis for
25 a takings claim.  Such vague and conclusory pleading does not satisfy
26 Rule 8.  See Iqbal, 556 U.S. at 678 ("A pleading that offers 'labels
27 and conclusions' or 'a formulaic recitation of the elements of a cause
28 of action will not do.'  Nor does a complaint suffice if it tenders

'naked assertion[s]' devoid of 'further factual enhancement.'" (quoting Twombly, 550 U.S. at 555, 557)); Spindler v. City of Los Angeles, 2018 WL 6136791, *8 (C.D. Cal. 2018) ("Plaintiff bundles multiple alleged constitutional violations or state torts into a single claim for relief without attempting clearly to set forth facts supporting the elements of each alleged violation or tort.  Such bundling would make it nearly impossible for any responding party to craft a response to the pleading.  This sort of vague, disjointed, conclusory and unclear pleading does not satisfy the requirements of Rule 8.").

Moreover, Rule 10(a) of the Federal Rules of Civil Procedure requires that "[t]he title of the complaint must name all the parties[.]"  Here, the FAC's title lists as Defendants the "County of Los Angeles, et al." while the body of the FAC sets forth the nine Defendants listed above.  (FAC at 3-7).  This does not satisfy Rule 10(a).  See Ferdik v. Bonzelet, 963 F.2d 1258, 1260-63 (9th Cir. 1992).

Additionally, the FAC violates Fed. R. Civ. P. 10(b), which requires that a "party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. . . .  If doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count. . . ."  "'Separate counts will be required if necessary to enable the defendant to frame a responsive pleading or to enable the court and the other parties to understand the claims.'" Bautista v. Los Angeles Cnty., 216 F.3d 837, 840 (9th Cir. 2000) (citation omitted).  "Courts have required separate counts where multiple claims are asserted, where they arise out of separate

transactions or occurrences, and where separate statements will facilitate a clear presentation." Id. at 840-41. "In such cases, separate counts permit pleadings to serve their intended purpose to frame the issue and provide the basis for informed pretrial proceedings." Id. at 841. "'Experience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice.'" Id. (citations omitted). Here, Plaintiff has improperly raised in a single claim purported violations of the First, Fourth, Fifth, Eighth and Fourteenth Amendments related to the alleged illegal removal of Plaintiff from Judge Cops's courtroom as well as the denial of Plaintiff's request "to generate complaints," a false assertion that Plaintiff had an outstanding warrant against him, and a failure to remedy the alleged violations and train LASD employees. (See FAC at 3-13).

Given these violations of the Federal Rules of Civil Procedure, Plaintiff's FAC must be dismissed with leave to amend. The Court will nevertheless highlight several other deficiencies in the FAC.

First, Plaintiff has sued both the County and its Sheriff's Department. A municipality may be held liable under § 1983 only for constitutional violations occurring pursuant to an official government policy or custom. Collins v. City of Harker Heights, Tex., 503 U.S. 115, 121 (1992); Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978); see also Rivera v. Cnty. of Los Angeles, 745 F.3d 384, 389 (9th Cir. 2014) ("[M]unicipalities, including counties and their sheriff's

departments, can only be liable under § 1983 if an unconstitutional action 'implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" (citation omitted)). However, "a municipality cannot be held liable solely because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." Monell, 436 U.S. at 692; Board of the Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 403 (1997). Thus, "[i]n order to hold the County [and/or LASD] liable under § 1983, [Plaintiff] must show (1) that he possessed a constitutional right of which he was deprived; (2) that the County [and/or LASD] had a policy; (3) that the policy amounts to deliberate indifference to [Plaintiff's] constitutional right; and (4) that the policy is the 'moving force behind the constitutional violation.'" Anderson v. Warner, 451 F.3d 1063, 1070 (9th Cir. 2006) (citations and internal quotation marks omitted); Dougherty v. City of Covina, 654 F.3d 892, 900 (9th Cir. 2011). "To meet [the 'moving force'] requirement, the plaintiff must show both causation-in-fact and proximate causation." Gravelet-Blondin v. Shelton, 728 F.3d 1086, 1096 (9th Cir. 2013); see also Villegas v. Gilroy Garlic Festival Ass'n, 541 F.3d 950, 957 (9th Cir. 2008) (en banc) ("[T]here must be 'a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'" (quoting City of Canton v. Harris, 489 U.S. 378, 385 (1989)).

Here, Plaintiff conclusorily asserts the County "maintains polic[ies] or customs that contribute to [the] failure to train/and or supervise" their employees who "are then allowed to uphold unconstitutional policies and procedures with deliberate indifference

towards" Plaintiff. (FAC at 7, 12). He also alleges the LASD's Court Services Division is "upholding unconstitutional, illegal, and repressive policies[,] procedures and customs" that violated Plaintiff's constitutional rights. (Id.). However, such conclusory allegations are insufficient to state a Monell claim against the County or the LASD. See Capp v. Cnty. of San Diego, 940 F.3d 1046, 1061 (9th Cir. 2019) ("[E]ven if Plaintiffs had pleaded a plausible Fourth Amendment claim, the FAC ascribes Defendants' alleged misconduct to official policy in a conclusory fashion that is insufficient to state a viable claim."); Fortson v. Los Angeles City Attorney's Office, 852 F.3d 1190, 1195 (9th Cir. 2017) ("Fortson's [Monell] claims against the [police department] fail because he has not sufficiently . . . identified an official policy or custom that was the 'moving force' behind a potential constitutional violation."); AE ex rel. Hernandez v. Cnty. of Tulare, 666 F.3d 631, 637 (9th Cir. 2012) (Monell claims "'must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively'" and "'must plausibly suggest an entitlement to relief'" (quoting Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011))); Dougherty, 654 F.3d at 900-01 (affirming dismissal of Monell claim when the plaintiff failed to allege "any facts demonstrating that his constitutional deprivation was the result of a custom or practice of the City of Covina or that the custom or practice was the 'moving force' behind his constitutional deprivation.").

Second, Plaintiff alleges Captain Lecrivain had a supervisory role, but failed to train and supervise his subordinates. (FAC at 6, 11-12). However, "[t]here is no respondeat superior liability under 42

11

U.S.C. § 1983." Olson v. Cnty. of Grant, 127 F.4th 1193, 1197 (9th Cir. 2025); see also Peralta v. Dillard, 744 F.3d 1076, 1085 (9th Cir. 2014) (en banc) ("Supervisors aren't vicariously liable for constitutional violations under section 1983."). Rather, "[a]n official may be liable as a supervisor only if either (1) he or she was personally involved in the constitutional deprivation, or (2) a sufficient causal connection exists 'between the supervisor's wrongful conduct and the constitutional violation.'" Felarca v. Birgeneau, 891 F.3d 809, 819-20 (9th Cir. 2018) (quoting Starr, 652 F.3d at 1207); Rico v. Ducart, 980 F.3d 1292, 1303 (9th Cir. 2020). "'The requisite causal connection can be established by setting in motion a series of acts by others, or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury.'" Felarca, 891 F.3d at 820 (citation omitted); Rico, 980 F.3d at 1303. "Thus, a supervisor may 'be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others.'" Rodriguez v. Cnty. of Los Angeles, 891 F.3d 776, 798 (9th Cir. 2018) (citation omitted). Here, however, Plaintiff's conclusory allegations are insufficient to state a claim against Captain Lecrivain. Iqbal, 556 U.S. at 680-81; Keates v. Koile, 883 F.3d 1228, 1243 (9th Cir. 2018); Blantz v. Cal. Dep't of Corrs. & Rehab., 727 F.3d 917, 927 (9th Cir. 2013).

Third, Plaintiff has sued Judge Cops in her individual capacity because she "was a percipient witness to all the happenings in her

courtroom as she sat on the bench" and did not intervene while Plaintiff was removed from the courtroom. (FAC at 3-4, 9). However, "[i]t is well established that state judges are entitled to absolute immunity for their judicial acts." Swift v. California, 384 F.3d 1184, 1188 (9th Cir. 2004); Mireles v. Waco, 502 U.S. 9, 9-10 (1991) (per curiam); see also Sheppard v. Maxwell, 384 U.S. 333, 358 (1966) ("[T]he courtroom and courthouse premises are subject to the control of the court."); Duvall v. Cnty. of Kitsap, 260 F.3d 1124, 1133 (9th Cir. 2001) ("[E]xercising control over the courtroom while court is in session" is a normal judicial function); Stevens v. Osuna, 877 F.3d 1293, 1305 (11th Cir. 2017) ("Judges have an obligation to maintain control over the courthouse and over the conduct of persons in the courthouse; the issuance of an order removing persons from the courthouse in the interest of maintaining such control is an ordinary function performed by judges: for example, where a person might not be complying with a court order or might be impeding the judicial proceeding." (footnotes omitted)); Cameron v. Seitz, 38 F.3d 264, 271 (6th Cir. 1994) ("[W]hen [a judge] barred [the plaintiff] from his courtroom, he was acting in his judicial capacity and was entitled to judicial immunity.").

Fourth, Plaintiff conclusorily asserts that one or more Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment. (See FAC at 8, 11-12). However, the Eighth Amendment is inapplicable to Plaintiff's allegations. See, e.g., Graham v. Connor, 490 U.S. 386, 392 n.6 (1989) ("[T]he Eighth Amendment's protections [do] not attach until after conviction and sentence."); Ingraham v. Wright, 430 U.S. 651, 667-68 (1977) ("In the few cases where the

13

[Supreme] Court has had occasion to confront claims that impositions outside the criminal process constituted cruel and unusual punishment, it has had no difficulty finding the Eighth Amendment inapplicable."); id. at 671 n.40 ("Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions."); In re Grand Jury Proceedings, 33 F.3d 1060, 1062 (9th Cir. 1994) ("[T]he Eighth Amendment is not applicable until there has been a formal adjudication of guilt in accordance with due process of law.").

Fifth, Plaintiff conclusorily alleges he was denied court access. (FAC at 5-7, 9-11). "'[T]he right of access to the courts is a fundamental right protected by the Constitution.'" Ringgold-Lockhart v. Cnty. of Los Angeles, 761 F.3d 1057, 1061 (9th Cir. 2014) (quoting Delew v. Wagner, 143 F.3d 1219, 1222 (9th Cir. 1998)). Claims for denial of access to courts may arise from either the frustration of "a litigating opportunity yet to be gained" (a forward-looking claim), or from "an opportunity already lost" (a backward-looking claim). Christopher v. Harbury, 536 U.S. 403, 413-14 (2002). In either case, "the very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong. . . . [T]he right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." Id. at 414-15. Thus, to state a claim for deprivation of the right of access to courts, a plaintiff must establish: (1) a "'nonfrivolous,' 'arguable' underlying claim," pled "in accordance with [Rule] 8(a), just as if it were being independently pursued"; (2) the official acts that frustrated the litigation of the

14

underlying claim; and (3) a plain statement describing the "remedy available under the access claim and presently unique to it." Id. at 415-18 (footnote omitted). Plaintiff's allegations fail to meet any of these elements. See Moore v. Bd. of Trustees of Yakima Cnty. Library, 268 F. App'x 669, 671 (9th Cir. 2008) ("The district court properly dismissed Moore's access-to-courts claim because the complaint does not allege: (1) a nonfrivolous, arguable underlying claim, whether anticipated or lost; (2) the official acts frustrating the litigation; and (3) to the extent a backward-looking claim is alleged, a remedy that may be awarded as recompense that is not available in a future action.").

Sixth, Plaintiff cursorily contends that Defendants violated his Fourth Amendment right to be free from unreasonable searches and seizures. (FAC at 5, 8-12). "The Fourth Amendment provides that "'[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.'" Lange v. California, 594 U.S. 295, 301 (2021) (quoting U.S. Const. amend. IV); see also Byrd v. United States, 584 U.S. 395, 402 (2018) ("Few protections are as essential to individual liberty as the right to be free from unreasonable searches and seizures."). The Fourth Amendment "protects two types of expectations, one involving 'searches,' the other 'seizures.'" United States v. Jacobsen, 466 U.S. 109, 113 (1984); Soldal v. Cook Cnty., Ill., 506

15

U.S. 56, 63 (1992). Here, Plaintiff does not contend any Defendant searched him.[2]

To state a Section 1983 claim for an unreasonable seizure in violation of the Fourth Amendment, Plaintiff must allege the Defendants' conduct constituted a seizure, and the seizure was unreasonable. Brower v. Cnty. of Inyo, 489 U.S. 593, 599 (1989). A "seizure occurs any time an 'officer accosts an individual and restrains his freedom to walk away.'" Sanderlin v. Dwyer, 116 F.4th 905, 912 (9th Cir. 2024) (quoting Terry v. Ohio, 392 U.S. 1, 16 (1968)); see also United States v. Mendenhall, 446 U.S. 544, 554 (1980) (A "person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."). Plaintiff's conclusory allegations do not state a claim for a Fourth Amendment seizure. At most, Plaintiff alleges he was escorted out of Judge Cops's courtroom. (FAC at 9). But, without more, this does not constitute a Fourth Amendment seizure. See Peery v. City of Miami, 977 F.3d 1061, 1071 (11th Cir. 2020) ("The key question [for Fourth Amendment purposes] is whether a reasonable person can 'terminate the encounter' with police. A person who is told to leave

---

[2] "A Fourth Amendment search occurs when the government either physically intrudes upon persons, houses, papers, or effects or invades a person's reasonable expectation of privacy in one of the constitutionally enumerated areas." Hotop v. City of San Jose, 982 F.3d 710, 714 (9th Cir. 2020) (per curiam) (brackets, citation and internal quotation marks omitted); Whalen v. McMullen, 907 F.3d 1139, 1146 (9th Cir. 2018); see also Soldal, 506 U.S. at 63 ("A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." (quoting Jacobsen, 466 U.S. at 113)).

one place but 'remains free to go anywhere else that he wishes' can undoubtedly terminate his encounter." (citations omitted)); Salmon v Blesser, 802 F.3d 249, 253 (2d Cir. 2015) ("Police officers frequently order persons to leave public areas: crime scenes, accident sites, dangerous construction venues, anticipated flood or fire paths, parade routes, areas of public disorder, etc.  A person may feel obliged to obey such an order.  Indeed, police may take a person by the elbow or employ comparable guiding force short of actual restraint to ensure obedience with a departure order.  Our precedent does not view such police conduct, without more, as a seizure under the Fourth Amendment as long as the person is otherwise free to go where he wishes."); Sheppard v. Beerman, 18 F.3d 147, 153 (2d Cir. 1994) (escorting Sheppard from the courthouse did not constitute a Fourth Amendment seizure when "Sheppard was 'free to go anywhere else that he desired,' with the exception of Beerman's chambers and the court house."); Tenser v. Silverman, 2021 WL 4958986, *1 (9th Cir. 2021) ("Tenser fails to state a Fourth Amendment claim because it is not a seizure to escort someone from a courthouse on a judge's order. . . .").

Seventh, Plaintiff complains he was denied equal protection of the law.  (FAC at 5-6, 8, 10-12).  The "Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne, Texas v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985); Sampson v. Cnty. of Los Angeles, 974 F.3d 1012, 1022 (9th Cir. 2020).  "To state a § 1983 claim for violation of the Equal Protection Clause a plaintiff must show that the defendants acted

17

with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." Thornton v. City of St. Helens, 425 F.3d 1158, 1166 (9th Cir. 2005) (citation and internal quotation marks omitted); Shooter v. Arizona, 4 F.4th 955, 960 (9th Cir. 2021). "'Intentional discrimination means that a defendant acted at least in part because of a plaintiff's protected status.'" Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003) (citation and emphasis omitted); Maynard v. City of San Jose, 37 F.3d 1396, 1404 (9th Cir. 1994).

Here, Plaintiff's vague and conclusory allegations of an equal protection violation are insufficient to state a Section 1983 claim. Litmon v. Harris, 768 F.3d 1237, 1241 (9th Cir. 2014); Pena v. Gardner, 976 F.2d 469, 471 (9th Cir. 1992). Among other deficiencies, Plaintiff does not allege that Defendants treated other similarly situated persons differently than Plaintiff.[3] City of Cleburne, 473 U.S. at 439; Hartmann, 707 F.3d at 1123; see also Okwu v. McKim, 682 F.3d 841, 846 (9th Cir. 2012) (Plaintiff failed to state an equal protection claim when she "did not allege that any of the defendants treated any similarly-situated individual differently."); Pimentel v. Dreyfus, 670 F.3d 1096, 1106 (9th Cir. 2012) ("To state an equal protection claim of any stripe, whatever the level of scrutiny it invites, a plaintiff must show that the defendant treated the plaintiff differently from similarly situated individuals."); Ventura Mobilehome Communities

---

[3] The Court has not attempted to address every deficiency in Plaintiff's FAC, or discuss every purported constitutional violation Plaintiff asserts. It is sufficient at this point to note that Plaintiff's FAC must be dismissed with leave to amend due to Plaintiff's failure to comply with Rules 8 and 10 and because none of his vague and conclusory allegations are sufficient to state a claim for relief. Litmon, 768 F.3d at 1241; Pena, 976 F.2d at 471.

18

Owners Ass'n v. City of San Buenaventura, 371 F.3d 1046, 1055 (9th Cir. 2004) (conclusory allegations of an equal protection violation, unaccompanied by any allegations identifying other similarly-situated individuals or alleging how they were treated differently from plaintiff, were insufficient to state an equal protection claim).

**ORDER**

Plaintiff's First Amended Complaint (Dkt. No. 13) is **DISMISSED WITH LEAVE TO AMEND.** If Plaintiff still wishes to pursue this action, he shall file a Second Amended Complaint within thirty (30) days, which cures the pleading defects discussed herein. The Second Amended Complaint shall be complete in itself without reference to any pleading or other document. See Local Rule 15-2 ("Every amended pleading filed as a matter of right or allowed by order of the Court shall be complete including exhibits. The amended pleading shall not refer to the prior, superseded pleading."). In addition, the Second Amended Complaint may not include new defendants or claims not reasonably related to the allegations in the previously filed pleadings. **Plaintiff is strongly encouraged to utilize the standard civil rights complaint form when filing any amended complaint, a copy of which is attached.**

Plaintiff is explicitly cautioned that failure to timely file a Second Amended Complaint, or failure to correct the deficiencies described herein, will result in a recommendation that this action be dismissed for failure to prosecute and/or failure to comply with a court order. Plaintiff is further advised that if he no longer wishes to pursue this action, he may file a Notice of Dismissal in accordance

with Federal Rule of Civil Procedure 41(a)(1).  **A form Notice of Dismissal is attached for Plaintiff's convenience**.

**IT IS SO ORDERED.**

DATED: May 27, 2025

>                              /s/
>                         ALKA SAGAR
>                  UNITED STATES MAGISTRATE JUDGE